JUSTICE GRAY
specially concurs and dissents.
¶35 I concur in the Court’s opinion on issue 2, which holds that the District Court did not abuse its discretion when it refused to admit photographs offered as demonstrative evidence. I dissent from the opinion on issue 1 and, for that reason, I would not remand for a new trial. As a further consequence of my dissent, I would address issue 3 and hold that the District Court did not abuse its discretion in denying Darlene’s motion to compel discovery.
¶36 With regard to issue 1,1 agree with the Court that the pertinent questions are 1) whether the District Court abused its discretion in admitting Vandenbosch’s testimony on cross-examination that the radio caller told him that the woman who had fallen was drunk; and 2) if so, whether the admission of that testimony materially affected Darlene’s substantial rights. I also agree with the Court’s conclusion that the District Court abused its discretion in admitting the hearsay testimony. It is my view, however, that the Court is wrong — and *269 clearly wrong — in holding that Darlene’s substantial rights were affected, thereby entitling her to a new trial.
¶37 The Court’s conclusion that Darlene’s substantial rights were affected by admission of part of Vandenbosch’s testimony and by the reference to it in closing argument by defense counsel is based on far too limited a review of the record before us, a review which would lead the reader to conclude that Vandenbosch’s reference was the only testimony regarding whether Darlene had been drinking before her fall at the Sheraton. Nothing could be further from the truth.
¶38 The controlling pretrial order in this case reflects that Darlene contended the Sheraton and its insurer were negligent and that their negligence resulted in serious and permanent injury to her back and legs. The defendants contended, in turn, that they were not negligent in any fashion. They further contended that, assuming some negligence on their part was found, their negligence was not a cause of any damages and/or injuries sustained by Darlene. Finally, they contended that Darlene was negligent and that her negligence contributed to the cause of her damages and/or injuries. The case proceeded to trial on the basis of the pretrial order.
¶39 Darlene’s counsel’s opening statement to the jury was brief. The Sheraton’s opening statement tracked through most of the evidence it expected to be presented during the trial. It referenced Darlene’s and her companion’s coming testimony that they had been out dancing, socializing and having a few drinks on the evening in question. Counsel also noted that Darlene would testify that the total of 3 to 4 rum and Diet Cokes she consumed that night — without having any food — did not have anything to do with her fall. Counsel made no mention of any coming testimony by Vandenbosch that the radio caller said the woman who fell was drunk.
¶40 The 4-day trial proceeded much as outlined by the Sheraton’s counsel in his opening statement, including the testimony about Darlene and her companion having a number of drinks on the night of her fall. The testimony also included, of course, Vandenbosch’s inadmissible hearsay testimony referenced above.
¶41 In closing arguments, Darlene’s counsel recounted her testimony that she had been out dancing and socializing and having a few drinks on the evening in question. He argued that the Sheraton was negligent and that, if the hole had not existed in the carpet, she would not have fallen. Darlene’s counsel also argued,
*270 That evening — if she was drunk, and she wasn’t — and she stepped in that hole and fell over backwards they would still be liable. If she was drunk, that’s not a defense [to the Sheraton’s negligence].
Thus, Darlene’s counsel addressed the matter of her drinking directly in his closing argument, no doubt recognizing that it was necessary to do so because of the testimony of Darlene and her companion regarding their activities that evening.
¶42 The closing argument by counsel for the Sheraton runs to nearly 30 pages of transcript. It centered primarily on the lack of proof advanced by Darlene as to any negligence, but also noted that the Sheraton had raised as a defense that Darlene was at fault in the fall. Counsel then made a 1-sentence reference to the portion of Vandenbosch’s testimony about which Darlene complains on appeal: “He had heard that there was some woman who had been drinking.” That was the extent of counsel’s reference to Darlene’s drinking on the night in question and, of course, Vandenbosch’s testimony aside, Darlene had admitted that she had, in fact, been drinking that night.
¶43 Finally, the record reflects that this case went to the jury on a Special Verdict form of a relatively common type. The first question thereon was “Were the defendants negligent?” The second question, “Was the negligence of the defendants a legal cause of Plaintiffs’ [sic] damages?” The third question, “Was the Plaintiff negligent?” As is usual in this type of special verdict form, the jury was instructed to answer yes or no to the first question and, if it answered “no,” to date and sign the Special Verdict. Indeed, that is what the jury did: it answered the first question — regarding whether the defendants were negligent — “No” and that was the end of the jury’s deliberations. In other words, the jury did not reach the causation question or the comparative negligence question.
¶44 I submit that, on this record, it is impossible to conclude that Darlene’s substantial rights were affected by Vandenbosch’s testimony about the remainder of the radio call he received. In the context of the other evidence, including Darlene’s own testimony about drinking that night, Vandenbosch’s testimony and defense counsel’s 1-sentence reference to it in a 30-page closing argument, simply was not — as the Court characterizes it— “inflammatory” and “prejudicial.”
¶45 Moreover, since the jury resolved the case by finding that the defendants were not negligent and did not reach the Special Verdict questions to which the extent of Darlene’s drinking were rele *271 vant — namely, causation and comparative negligence — it cannot be said that Darlene’s substantial rights were affected by the erroneous admission of a small part of Vandenbosch’s testimony. Indeed, we recently addressed a similar situation in Peschke v. Carroll College (1996), 280 Mont. 331, 929 P.2d 874. There, we concluded that the trial court had abused its discretion in admitting a videotape into evidence. We further concluded, however, that the plaintiffs substantial rights were not materially affected because the evidence went to the issue of causation which the jury had not reached because of its threshold finding that the college was not negligent, and held that the error was harmless. Peschke, 280 Mont. at 342-43, 929 P.2d at 881. Peschke clearly controls the proper resolution of issue 1 in the present case.
¶46 On issue 1,1 would hold that Darlene’s substantial rights were not materially affected by the erroneous admission of hearsay evidence and, as a result, that the error was harmless. Thus, I would affirm the District Court’s denial of Darlene’s motion for a new trial.
¶47 Finally, as noted above, I also would affirm the District Court’s denial of Darlene’s motion to compel discovery. Our cases holding that trial courts have broad discretion in discovery-related matters are legion and require no citation. Darlene simply has not established an abuse of discretion by the District Court in that regard.
¶48 I would affirm the District Court on all issues raised by Darlene on appeal and I dissent from the Court’s failure to do so.